IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MERCY J. B., § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| V. § | | No. 3:19-cv-00783-E-BN |
| § | | |
| ANDREW M. SAUL, § | | |
| Commissioner of Social § | | |
| Security Administration, § | | |
| § | | |
| Defendant. § | | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE**
**<u>UNITED STATES MAGISTRATE JUDGE</u>**

This case has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge David C. Godbey. *See* Dkt. No. 4.

Plaintiff Mercy J. B. seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). *See* Dkt. No. 16.

The Commissioner has filed his response in opposition, s*ee* Dkt. No. 18, and Plaintiff has filed her reply, *see* Dkt. No. 20.

For the reasons explained below, the hearing decision should be reversed.

**Background**

Plaintiff alleges that she is disabled due to borderline personality disorder, memory dysfunction, lumbar degenerative disc disease, knee degenerative joint disease, asthma, obesity, cervical degenerative disc disease, depression, anxiety and trauma/stress or related disorders. *See* Dkt. No. 16.

After Plaintiff's application for a period of disability and disability insurance benefits were denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). That hearing was held on January 4, 2018. *See* Dkt. No. 13-1 at 84-104.

The ALJ denied Plaintiff's claims on January 29, 2018. *See id.* at 161-81. But the ALJ's decision was vacated by the Appeals Council and Plaintiff's case was remanded with instructions for the ALJ to evaluate Plaintiff's impairments in accordance with the approach described in 20 C.F.R. §§ 1520a and 416.920a. *See id.* at 16. The Appeals Council also directed the ALJ to consider Plaintiff's maximum residual functional capacity ("RFC") during the entire period at issue and to provide a rationale with specific evidence of record in support of the assessed limitations. *See id.* The Appeals Council also asked that supplemental evidence from a vocational expert be provided to clarify the effect of Plaintiff's limitations to her occupational base and whether Plaintiff has any skills that are transferable to other occupations under the guidelines in SSR 82-41. *See id.*

A second administrative hearing was held on November 29, 2018. *See id.* at 54.

At the time of the hearing, Plaintiff was 49 years old. *See id.* Plaintiff has a high school education. *See id.* at 56.

Plaintiff has work experience as a cook, a food service director, and a call center representative. *See* Dkt. No. 13-1 at 35. Plaintiff has not engaged in substantial gainful activity since January 1, 2015. *See id.* at 19.

The ALJ found that Plaintiff was not disabled and therefore not entitled to SSI benefits. *See id.* at 38. Although the ALJ found that Plaintiff's severe impairments included "lumbar degenerative disc disease, knee degenerative joint disease, asthma, obesity, cervical degenerative disc disease, depression, anxiety and trauma/stressor related disorders," *see id.* at 19, the ALJ nonetheless concluded that these impairments did not meet or equal the criteria of a severe impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1, *see id.* at 27-29.

The ALJ further determined that Plaintiff has the RFC to perform light work. The ALJ determined that Plaintiff can:

> lift and carry 20 pounds occasionally and 10 pounds frequently, as well as stand and walk 2-hours out of an 8-hour workday and sit 6-hours out of an 8-hour workday. The claimant should have the ability to have her cane to get to and from the work zone. The Claimant should have just occasional balancing, stooping, bending, squatting, kneeling and crouching. The claimant should not crawl or climb, use ropes, ladders or scaffolds. She must avoid cold and heat extremes, wetness, humidity, fumes, odors, and hazards and hazardous machines. The claimant must avoid reaching overhead with the bilateral upper extremities. The claimant is limited to understanding, remembering and carrying out detailed tasks and instructions. The claimant requires no more than occasional contact with the public, coworkers and supervisors. Work activity should be routine and repetitive. The claimant must avoid work activity which requires problem solving above a simple level. The claimant can ask questions and request assistance.

*See id.* at 29.

Given Plaintiff's age, education, and exertional capacity for light work, the ALJ determined that Plaintiff is not disabled and otherwise capable of making a successful adjustment to such work. The ALJ concluded that Plaintiff could not return to past relevant work. *See id.* at 35. The ALJ concluded that given Plaintiff's age, education,

3

work experience, and RFC, she would be able to perform the requirements of representative occupations such as a table worker, a patcher, and a semiconductor bonder. *See id.* at 36.

  Plaintiff appealed the decision to the Appeals Council. The Council affirmed.

  Plaintiff then filed this action in federal district court. In Plaintiff's appeal she claims that the ALJ erred by not including her memory dysfunction and borderline personality disorder as part of her severe impairments and by not discussing the effect of these disorders on her ability to perform work activities. *See* Dkt. No. 16 at 2. Plaintiff also argues that the ALJ erred when he found that Plaintiff was more severely limited by her impairments than was determined by the state agency medical consultants, yet still found that Plaintiff could perform detailed tasks. *See id.* Plaintiff asserts that the ALJ should have explained his rationale. *See id.* at 3. And Plaintiff contends that the ALJ failed in establishing the existence of alternative work that Plaintiff could perform. *See id.*

  The Commissioner responds by arguing that substantial evidence supports the ALJ's finding. *See* Dkt. No. 18. The Commissioner contends that the ALJ properly weighed the medical opinion evidence and reached a supportable conclusion. *See id.* at 4-8. The Commissioner also asserts that substantial evidence supports the ALJ's finding that there is other work that Plaintiff can perform. *See id.* at 9-10.

  The undersigned concludes that the hearing decision should be reversed and this case remanded to the Commissioner of Social Security for further proceedings consistent with these findings and conclusions.

**Legal Standards**

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether Commissioner applied the proper legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Copeland*, 771 F.3d at 923. The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Copeland*, 771 F.3d at 923; *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). The Court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

"In order to qualify for disability insurance benefits or [supplemental security income], a claimant must suffer from a disability." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). A disabled worker is entitled to monthly social security benefits if certain conditions are met. *See* 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage

5

in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

"In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007).

The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *See Copeland*, 771 F.3d at 923; *Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Copeland*, 771 F.3d at 923; *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1)

objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

**Analysis**

Plaintiff contends that the ALJ erred by not including her memory dysfunction and borderline personality disorder as part of her severe impairments and by not discussing the effect of these disorders on her ability to perform work activities. *See* Dkt. No. 16 at 2. Plaintiff also argues that the ALJ erred when he found that Plaintiff was more severely limited by her impairments than was determined by the state

agency medical consultants yet still found that Plaintiff could perform detailed tasks and conclusions. *See id.* And Plaintiff asserts that the ALJ failed in establishing the existence of alternative work that Plaintiff could perform. *See id.* at 3.

The undersigned concludes that the ALJ's failure to consider and explain the effects of all of Plaintiff's medically determinable impairments in assessing Plaintiff's RFC requires reversal and remand.

Plaintiff argues that the ALJ's RFC assessment fails to account for all the medically determinable impairments established by the record evidence as well as all of the functional limitations established by the record evidence. *See* Dkt. No. 16 at 5.

Plaintiff points out that the Dallas VA Medical Center records from December 27, 2013 show that Plaintiff suffers from sleep disturbance, restlessness and seeing recurrent images from her military service in Iraq. *See id.* The records also show that Plaintiff has a history of aggressive behavior and trauma stemming from an incident where she witnessed "people jumping from a burning building when she was age 5 or 6." *Id.*

Plaintiff also has a criminal history stemming from an incident involving an assault with a deadly weapon. *See id.* at 6.

Based on her trauma as a child, her trauma serving in Iraq, and her trauma in connection with her domestic life, Plaintiff was found to meet the criteria for major depressive disorder. *See id.*

And, on July 21, 2015, Plaintiff completed a self-report measure of psychological functioning, which revealed some non-cooperation to test taking. *See*

*id.* Plaintiff also provided a larger than average number of infrequent responses. *See id.* Plaintiff's reported symptoms included "depressed mood, hopelessness, low self-esteem, self-doubt, pessimism, anger, problems with sleep, and constant anxiety." *Id.*

Plaintiff's evaluating clinician, Dr. Haley Downing, Ph.D., opined that Plaintiff suffered from any number of impairments, "including depressive and anxiety disorders, posttraumatic stress disorder and cluster C personality disorders. Dr. Downing indicated that the results support current diagnoses of PTSD and major depressive disorder." *Id.* at 7.

And, during an evaluation by Dr. Linda Cameron on October 30, 2018, Plaintiff reported that she was the victim of a sexual assault. *See id.* Plaintiff was also found to have suffered a traumatic brain injury "as the result of an explosion or blast from either an improvised explosive device or a rocket propelled grenade." *Id.*

Dr. Cameron found that "Plaintiff's response style may indicate a broad tendency to magnify the level of experienced illness or a characterological inclination to complain or to be self-pitying. On the other hand, her response style may convey feelings of extreme vulnerability associated with a current episode of acute turmoil. She showed significant pathology in basic personality functioning in terms of avoidant and negativistic aspects; indicating that she has a very sensitive personality type associated with a great deal of stress and physical disorders." *Id.*

As a result, Dr. Cameron diagnosed Plaintiff with generalized anxiety disorder, major depressive disorder, somatic symptom disorder, posttraumatic stress disorder, and borderline personality disorder. *See id.* at 8. The record also shows that Plaintiff

exhibits a borderline working memory and an arithmetic score that is significantly below average. *See* Dkt. No. 16 at 8.

Dr. Cameron concluded that Plaintiff would be unable to remember work-like procedures, maintain attention for two-hour segments, maintain regular attendance and be punctual, sustain an ordinary routine without special supervision, work in coordination or proximity to others, and, work a normal workday and workweek without interruptions from psychologically-based symptoms. *See id.* at 8-9. Dr. Cameron further concluded that Plaintiff would not be able to perform a consistent pace without an unreasonable number and length of rest periods, accept instructions and criticism from supervisors, and get along with co-workers or peers without unduly distracting them or exhibiting behavior extremes. *See id.* at 9.

Plaintiff argues that Dr. Cameron's findings show that Plaintiff has a significant personality disorder and that Dr. Cameron's findings are consistent with the findings of other VA evaluating psychologists. *See id.*

Plaintiff asserts that the ALJ committed reversible error by failing to consider the presence of either a personality disorder or a somatoform disorder in evaluating Plaintiff's severe impairments and in assessing the impact of such impairments upon Plaintiff's RFC. *See id.*

The Commissioner responds by arguing that the record reflects that, over the course of Plaintiff's treatment with the VA, Plaintiff consistently had normal mental status evaluations. *See* Dkt. No. 18 at 5.

The Commissioner asserts that Dr. Cameron's findings are not supported by the record evidence. *See id.* The Commissioner argues that the record evidence supports a conclusion that Plaintiff's memory is intact and appropriate. *See id.*

The Commissioner further argues that "no physician, but for her one-time evaluator, Dr. Cameron, diagnosed [Plaintiff] with a personality disorder or a somatoform disorder, and as noted above, the medical evidence overwhelmingly revealed normal mental status examinations and intact memory functioning." *Id.* at 6.

The Commissioner also argues that

> the ALJ found that [Plaintiff] has severe mental impairments of depression, anxiety, and trauma/stressor related disorders (Tr. 15-23, Finding 3). The ALJ provided for these impairments by limiting her to understanding, remembering, and carrying out detailed tasks and instructions; no more than occasional contact with the public, coworkers, and supervisors; routine and repetitive work activity; the avoidance of work activity which required problem solving above a simple level; and the ability to ask questions and request assistance (Tr. 25, Finding 5). Even if the evidence did support her argument, [Plaintiff] does not indicate any additional limitations that were needed for her allegations of a severe personality disorder, somatoform disorder, and memory deficits. Pl.'s Br. at 4-9.

*Id.* at 6.

Plaintiff replies that the Commissioner's argument that Dr. Cameron only evaluated Plaintiff on one occasion and that other record evidence does not support a diagnosis of personality disorder is but one factor that should have been considered under the criteria set forth in 20 C.F.R. §§ 404.1527 and 416.927. *See* Dkt. No. 20 at 3.

11

According to Plaintiff, the ALJ never made such an analysis under the Section 404.1527 and 416.927 factors. *See id.* Plaintiff further argues that the ALJ never mentioned Plaintiff's diagnosis of personality disorder or somatoform disorder and never provided any basis for rejecting the diagnosis. *See id.* Plaintiff contends that the Commissioner may not offer a rationalization of the ALJ's finding after the fact. *See id.*

Plaintiff argues that Dr. Cameron's evaluation was much more thorough than other examinations in the record and that Dr. Cameron's conclusions have greater support through psychometric testing. *See id.*

And Plaintiff points out that Dr. Downing's evaluation suggested a number of psychiatric diagnoses, including cluster C personality traits, and that supports Dr. Cameron's conclusions. *See id.* at 4.

The undersigned is persuaded that Plaintiff has shown reversible error.

"[O]rdinarily the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) (quoting *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)). But courts have also held that treating physician's opinions are far from conclusive because "the ALJ has the sole responsibility for determining the claimant's disability status." *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990). In the ALJ's determination, if he or she finds good cause, "less weight, little weight, or even no weight may be given to the physician's testimony." *Greenspan*, 38 F.3d at

237; *see Newton*, 209 F.3d at 456 ("Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence.").

Before rejecting a treating source opinion, the ALJ must address several relevant factors, including the length of the treatment relationship, frequency of examination, nature and extent of the treating relationship, evidence supporting the opinions, the consistency of those opinions, and medical specialization. *See* 20 C.F.R. § 404.1527(d); *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir.2000).

The Commissioner argues that Dr. Cameron's assessment of Plaintiff is inconsistent with other record evidence. But the undersigned cannot find this explanation within the body of the ALJ's decision. And, as Plaintiff points out, the Commissioner's decision must stand or fall based on the reasons set forth in the ALJ's decision as affirmed by the Appeals Council, not on the Commissioner's post hoc reasoning in the briefs filed with the court. *See Newton*, 209 F.3d at 455.

In assessing Dr. Cameron's findings, the ALJ should have considered "(1) the physician's length of treatment of the claimant; (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician." *Newton*, 209 F.3d at 456. The ALJ's failure to do so compels

remand, where, had he done so and then given Dr. Cameron's opinion greater weight, his RFC determination may have been different.

## Recommendation

The hearing decision should be reversed and this case remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: August 3, 2020

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE

15